RENEE M. CARDOSI, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Cardosi v. Commissioner
Docket No. 26113-93
United States Tax Court
T.C. Memo 1995-145; 1995 Tax Ct. Memo LEXIS 144; 69 T.C.M. (CCH) 2305; April 4, 1995, Filed *144 Decision will be entered under Rule 155. Renee M. Cardosi, pro se. For respondent: Barbara E. Horan. DEAN
DEAN
MEMORANDUM OPINION DEAN, Special Trial Judge: This case was assigned pursuant to the provisions of section 7443A(b)(3) and Rules 180, 181, and 182. [1]
Respondent determined a deficiency of $ 2,977 in petitioner's 1991 Federal income tax. The issues for decision are: (1) Whether petitioner is entitled to claim a deduction for a dependency exemption with respect to her daughter, Ann M. Bentley; (2) whether petitioner is a qualifying surviving spouse for purposes of filing her 1991 Federal income tax return; (3) whether petitioner is entitled to a bad debt deduction in the amount of $ 9,192.96; and (4) whether petitioner is entitled to the earned income credit under section 32. Some of the facts have been stipulated and are *145 so found. The stipulation of facts and attached exhibits are incorporated herein by this reference. Petitioner resided in Parker, Colorado, at the time she filed her petition. Respondent's determinations in this matter are presumed correct, and petitioner bears the burden of proving otherwise. Rule 142(a); Welch v. Helvering, 290 U.S. 111 (1933). Background
Petitioner is the mother of Ann M. Bentley, and the grandmother of Kristen Bentley. Both Ann and Kristen Bentley resided with petitioner during 1991. [2] For the year at issue, Ann Bentley was married, and filed a joint Federal income tax return with her husband, Brett K. Bentley. [3] Petitioner claimed a deduction for a dependency exemption with respect to Ann Bentley on her 1991 Federal income tax return. Respondent disallowed this deduction on the basis that petitioner had not established that Ann Bentley qualified as a dependent within the meaning of section 152. *146 The Bentleys, petitioner, and respondent have all agreed that, for the taxable year 1991, it is petitioner, and not the Bentleys, who is entitled to a dependency exemption for Kristen. Petitioner's husband, Alexander Arsene Cardosi, died on July 5, 1990. Thereafter, petitioner elected to file as a qualified surviving spouse on her 1991 Federal income tax return, claiming the commensurate standard deduction and utilizing the tax rates provided for by sections 63(c) and 1(a). Respondent argues that petitioner was not a qualified surviving spouse for the year at issue, as she was unable to claim a dependency exemption for her daughter, Ann Bentley. On Schedule C of her 1991 Federal income tax return, petitioner claimed a bad debt deduction in the amount of $ 9,192.96. A supporting statement to petitioner's return states that this deduction represents amounts owed by Austrat Management for an unpaid 62-month office space lease. The supporting statement indicates that the due date for payment on this lease was December 31, 1991, and despite petitioner's efforts to collect, Austrat Management did not pay thereon. Respondent disallowed the deduction for this purported debt based *147 on a lack of substantiation and for failure to meet the requirements of section 1.166-1(e), Income Tax Regs.
Subsequent to the filing of petitioner's 1991 Federal income tax return, respondent determined that petitioner had made an error thereon, and allowed a previously unclaimed earned income credit. Respondent disallowed this credit, however, in the notice of deficiency, having determined that petitioner was not entitled to claim Ann Bentley as a dependent. Respondent now concedes that petitioner may be entitled to the earned income credit, albeit for her granddaughter, Kristen, depending on our decision in Bentley v. Commissioner, T.C. Memo. 1995-144. Dependency Exemption
Section 151 generally allows a deduction for a dependency exemption with respect to each dependent: [4] (1) Whose gross income for the taxable year is less than the exemption amount; or (2) who is a child of the taxpayer and who (i) has not attained the age of 19 at the close of the calendar year in which the taxable year of the taxpayer begins, or (ii) is a student who has not attained the age of 24 at the close of such calendar year. Despite this general rule, section *148 151(c)(2) states that no deduction for a dependency exemption shall be allowed for any dependent who has filed a joint return with her spouse for the taxable year at issue. The record is not clear whether petitioner's daughter, Ann Bentley, qualified as petitioner's dependent for the taxable year 1991. In any event, pursuant to section 151(c)(2), petitioner is not entitled to a deduction for a dependency exemption, as Mrs. Bentley filed a joint return with her husband for 1991. Qualification as a Surviving Spouse
In pertinent part, section 2(a) defines a "surviving spouse" as a taxpayer: (1) whose spouse died during either of the two preceding taxable years; (2) who maintains as her home a household which, for the taxable year, is the principal place of abode of the taxpayer's son or daughter; [5] and (3) *149 the taxpayer is entitled to a deduction for a dependency exemption under section 151 for such son or daughter. Sec. 2(a)(1); sec. 1.2-2(a)(1), Income Tax Regs.
As we have held that petitioner may not claim a deduction for a dependency exemption with respect to her daughter, Ann Bentley, petitioner cannot, within the meaning of section 2(a)(1), qualify as a surviving spouse for the year at issue. Because of the dependency exemption stipulated to by the parties with respect to Kristen, respondent stated at trial that petitioner would qualify to file as a "head of household" for the taxable year 1991. See sec. 2(b). *150 We agree. Petitioner's income tax rate and standard deduction will be adjusted accordingly in the Rule 155 computation. Bad Debt Deduction
Petitioner argued for the first time at trial that she had "mislabeled" the $ 9,192.96 claimed as a bad debt deduction on her 1991 return, and that we should instead treat the deduction as one for the worthlessness of a partnership interest. [6] Petitioner did not explain how such a treatment could be reconciled with the supporting statement attached to her return. *151 As a general principle, we will not consider issues that are raised for the first time at trial or on brief. Foil v. Commissioner, 92 T.C. 376, 418 (1989), affd. 920 F.2d 1196 (5th Cir. 1990); Markwardt v. Commissioner, 64 T.C. 989, 997 (1975). In any event, we find no basis in the record for accepting petitioner's recharacterization. To demonstrate the existence of a partnership interest for which she could claim a worthlessness deduction, petitioner introduced into evidence a memorandum agreement between herself and Internal Revenue agent Tom Roginski, dated February 20, 1992. The memorandum sets forth petitioner's agreement to treat a partnership loss distribution "originating from" the "Magenta Minerals Exploration and Development Partnership" as a passive activity loss, rather than a net operating loss. Even if we were to accept that petitioner held an interest in the Magenta Minerals Exploration and Development Partnership, it is impossible to tell from the record what that interest was or when the interest became worthless. [7] Although this court has previously allowed a deduction *152 under section 165 for the worthlessness of a partnership interest, such a loss must be evidenced by closed and completed transactions, fixed by identifiable events, which show the year in which such loss was sustained. See Tejon Ranch Co. v. Commissioner, T.C. Memo. 1985-207; sec. 1.165-1(b), (d), Income Tax Regs. Petitioner has not met her burden of proof on this issue. Accordingly, we will consider her initial characterization of the deduction as resulting from lease payments owed by Austrat Management. [8]
*153 Section 166 provides that a deduction is allowed for any debt which becomes worthless within the taxable year. Worthless debts arising from unpaid wages, salaries, fees, rents and similar items of taxable income are permitted as a deduction under section 166 only if the income such items represent has been reported as income on an income tax return, either in the year for which the deduction is claimed, or for a prior taxable year. Sec. 1.166 -1(e), Income Tax Regs.
Petitioner contends that she is entitled to a bad debt deduction for the unpaid lease with Austrat Management. Petitioner failed, however, to demonstrate that any payments on the lease were reported as income for Federal income tax purposes. Having so found, the question of whether such a debt existed, or whether it was worthless, is moot. Gertz v. Commissioner, 64 T.C. 598, 600 (1975). Respondent's determination on this issue is sustained. Earned Income Tax Credit
Section 32(a) provides for an earned income credit in the case of an "eligible individual" . In pertinent part, section 32(c)(1)(A) defines an "eligible individual" as an individual who has a "qualifying child" *154 for the taxable year. A "qualifying child" is an individual who satisfies a relationship test, a residency test, and an age test, and for whom the taxpayer satisfies an identification requirement. Sec. 32(c)(3)(A). Respondent concedes that Kristen is a qualifying child with respect to both petitioner and petitioner's daughter, Ann Bentley. Where two or more individuals qualify as eligible individuals with respect to the same qualifying child, only the individual with the highest adjusted gross income for the taxable year will be treated as an "eligible individual" for purposes of section 32. Sec. 32(c)(1)(C). Therefore, we leave it for the Rule 155 computation in this case and the related case of Bentley v. Commissioner, T.C. Memo. 1995-144, to determine whether it is petitioner or the Bentleys who has the highest adjusted gross income for 1991 and, consequently, who is the "eligible individual" with respect to Kristen.[9]
*155 Decision will be entered under Rule 155. Footnotes
1. Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for 1991. All Rule references are to the Tax Court Rules of Practice and Procedure.↩
2. The record is unclear as to whether Ann's husband, Brett Bentley, also resided with petitioner during 1991.↩
3. See the related case of Bentley v. Commissioner, T.C. Memo. 1995-144↩.
4. In pertinent part, sec. 152↩ defines a dependent as a son or daughter of the taxpayer, or a descendent of either, who receives over half of his or her support from the taxpayer during the calendar year.
5. Sec. 2(a) does not list descendants of a son or daughter as individuals who, as dependents, qualify the taxpayer as a surviving spouse. This stands in contrast to the definition of a dependent for purposes of section 151. See supra↩ note 4. Thus, the fact that petitioner may claim a dependency exemption for her granddaughter, Kristen, has no bearing on whether she is a "surviving spouse" for 1991.
6. We note that this was one of three related cases in which petitioners argued, with varying degrees of clarity, that they were entitled to deduct worthless interests in a "family" partnership identified either as "Fortune Group" or "Magenta Minerals". See Bentley v. Commissioner, T.C. Memo. 1995-144; Kaufman v. Commissioner, T.C. Memo. 1995-146. This argument was not raised in a fourth related case, Cardosi v. Commissioner, T.C. Memo. 1995-147↩.
7. Petitioner seemed to have an impression that the partnership dissolved in 1992, citing to the memorandum agreement with Agent Roginski for support. The memorandum agreement, however, makes no mention of such a dissolution. Furthermore, even if we accept petitioner's representations, the year in which the interest became worthless would be other than the one at issue and, therefore, would disentitle her to a deduction in 1991. Sec. 1.165 -1(b), (d), Income Tax Regs.↩
8. We note that petitioner could be deemed to have abandoned a claim to such a deduction in light of her testimony at trial. We address the issue, however, for purposes of completeness.↩
9. Once the "eligible individual" with respect to Kristen has been identified for 1991, entitlement to the earned income credit itself will be determined by the Rule 155 computation. See sec. 32(a) and (b)↩.